UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE PAUL HICKER,<br><br>                              Petitioner,<br><br>v.<br><br>SAN DIEGO COUNTY SUPERIOR<br>COURT,<br><br>                              Respondent. | Case No.:  13CV2957-WQH(JMA)<br><br>**REPORT & RECOMMENDATION** |

## I.    __INTRODUCTION__

Petitioner George Paul Hicker ("Petitioner") has filed a Petition for Writ of Habeas Corpus ("the Petition") under 28 U.S.C. § 2254, challenging his conviction in San Diego Superior Court, case number CN251716. (Doc. No. 1.; Pet. at 1:18-22.)  Petitioner contends that his Sixth Amendment right to confrontation was violated. (Id. at 6:17- 7:8.)

On February 20, 2009, a San Diego Superior Court jury found Petitioner guilty of violating Vehicle Code § 23152(b), driving with a blood alcohol level in excess of .08, with a prior Vehicle Code § 23152(b) conviction. (Pet. at 2:34-27.) Thereafter, Petitioner was sentenced to five years of summary probation, 96 hours jail with credit for 24 hours, 5 days weekend work release, an 18-month

1

1  alcohol program, a Mothers Against Drunk Driving panel class, a fine of

2  $2,408.00, and other terms as set forth in the Misdemeanor – Traffic Judgment

3  Minutes. (Resp. Lodgment 1.)

4       Petitioner challenges his conviction in this Court with the instant habeas

5  corpus action, pursuant to 28 U.S.C. § 2254.  Petitioner claims the trial court

6  violated his Sixth Amendment right to confrontation when it admitted a blood

7  alcohol report into evidence and permitted testimony by a blood sample analyst

8  who did not perform the blood tests in question.  (Pet. at 16:25-18:3.)  Petitioner

9  maintains he would not have been convicted of violating Vehicle Code §

10  23152(b) if his Sixth Amendment Confrontation Clause objections to the

11  evidence about his blood alcohol level had been sustained by the trial court

12  judge. (Id. at 4:2-15.)

13       Respondent Superior Court for the State of California, County of San Diego

14  ("Respondent") timely filed an Answer to the Petition asserting that the Appellate

15  Division of the San Diego County Superior Court did not contradict or

16  unreasonably apply United States Supreme Court precedent. (Doc. No. 19; Ans.

17  at 2:20-3:4.)  Alternatively, Respondent contends that any Sixth Amendment

18  violation was harmless error. (Id. at 3:5-11.)  Petitioner timely filed a Traverse to

19  his Petition. (Doc. No. 30.)  The Court has reviewed the parties' papers, as well

20  as the record, and for the following reasons, RECOMMENDS United States

21  Judge William Q. Hayes adopt the finding that Petitioner's Sixth Amendment right

22  to confrontation was not violated.  The Court further RECOMMENDS that the

23  Petition be denied with prejudice.

24  **II.**    **BACKGROUND FACTS**

25       On August 28, 2008, at 10:48 p.m., Petitioner was arrested for driving

26  under the influence. (Ans. at 4:16-17.)  Petitioner chose to provide a blood test to

27  measure his blood alcohol content. (Id. at 4:17.)  After Petitioner's arrest, a

28  sample of his blood was taken and tested by the San Diego County Sheriff's

Crime Laboratory. (Pet. at 9:6-7.)  The District Attorney's office filed a complaint against Petitioner on January 23, 2009, charging him with three counts: Count One - driving under the influence of alcohol, a violation of Vehicle Code § 23152(a); Count Two - driving with a measurable blood alcohol level above .08, a violation of Vehicle Code § 23152(b); and Count Three - driving with an open container, a violation of Vehicle Code § 23222(a). (Ans. at 2:11-15.)  Petitioner pled not guilty to the charges. (Pet. at 9:11.)  Count Three was dismissed at trial on the People's motion. (Ans. at 2:18-19.)  After a jury trial (discussed below), Petitioner was acquitted of the charge of driving under the influence of alcohol and convicted of the charge of driving with a blood alcohol level of 0.08 percent or greater. (Pet. at 9:11-13.)

The two week jury trial began February 9, 2009 in the San Diego Superior Court. (Id. at 9:14-16.)  The prosecution called witness Jorge Peña ("Peña"), an analyst employed by the San Diego Crime Laboratory where Petitioner's blood sample was analyzed for blood content.  Peña did not perform the analysis of Petitioner's blood.  Rather, the analysis was performed by another lab technician, Raegan Carter ("Carter"). (Id. at 9:19-21.)  Peña was not present during the analysis of Petitioner's blood sample, nor did he supervise Carter. (Id. at 9:21-22.)  After the analysis was completed and reported by Carter, Peña reviewed her report. (Id. at 9:24-10:1.)

During direct examination of Peña, the prosecutor asked about the analysis of Petitioner's blood performed by Carter. (Id. at 10:4-5.)  Petitioner objected to Peña's testimony about the blood alcohol work performed by Carter on the grounds the testimony violated his Sixth Amendment right to confrontation.  The objection was overruled. (Id. at 10:6-9.)  The trial court granted the request by Petitioner's counsel that his Sixth Amendment objection continue throughout the prosecutor's line of questioning.  The prosecutor then asked Peña if he had an opinion about the accuracy of the blood alcohol results based upon the work

performed by Carter.  Again, Petitioner objected based on the Sixth Amendment. The objection was overruled. (Id. at 10:15-19.)  Peña provided his opinion that the blood alcohol results were accurate and testified the blood alcohol level was .142. (Ans. at 5:6-17.) The blood alcohol report was then introduced into evidence. (Pet. at 10:21-22.)  A jury subsequently convicted Petitioner for violation of Vehicle Code § 23152(b). (Ans. at 2:21-24.)

## III.   PROCEDURAL HISTORY

Petitioner appealed his conviction to the Appellate Division of the San Diego Superior Court ("Appellate Division").  The Appellate Division affirmed Petitioner's conviction, finding it was consistent with recent California Supreme Court decisions, including primarily People v. Lopez, 55 Cal.4th 569 (2012), dealing with the right to confrontation. (Resp. Lodgment 23 at 20:25–21:1.)

After the Appellate Division affirmed his conviction, Petitioner filed in the Appellate Division an application for certification for transfer to the California Court of Appeal.  The application was denied on March 25, 2013. (Pet. at 4:16-18.)  Petitioner then filed a petition for transfer in the California Court of Appeal, Fourth Appellate District, Division One.  The Court of Appeal denied the petition on April 16, 2013. (Id. at 4:18-21; Resp. Lodgment 3.)  Next, Petitioner filed a Petition for Writ of Certiorari in the United States Supreme Court on July 11, 2013. (Pet. at 4:22-24.)  The petition was denied on October 7, 2013. (Resp. Lodgment 4.)  Finally, Petitioner filed the instant Petition on December 5, 2013. (Doc. No. 1.)[1]

## IV.   DISCUSSION

Petitioner raises only one claim in the Petition. He argues he was denied his right to confrontation guaranteed by the Sixth Amendment when Carter's

---

[1] The Court previously ruled Petitioner satisfied the exhaustion requirement of 28 U.S.C. § 2254 because he is procedurally barred from filing a direct appeal or habeas petition for review with the California Supreme Court. (Doc. No. 10.)

13CV2957-WQH(JMA)

blood alcohol test was admitted into evidence, despite the fact that Carter was not available for cross-examination.  He also contends his right of confrontation was violated when Peña was permitted to testify about the contents of the blood alcohol analysis. (Pet. at 6:17-28.)  Respondent counters that the Appellate Division's denial of Petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established federal law. (Ans. at 2:20-3:4.) In the alternative, Respondent argues that any violation of Petitioner's Sixth Amendment rights was harmless. (Ans. at 3:5-11.)

**A. Standard of Review**

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("ADEPA"). See Lindh v. Murphy, 521 U.S. 320 (1997).  Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); Early v. Packer, 537 U.S. 3, 8 (2002).  In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential standard of review, inquiring only whether the state court's decision was objectively unreasonable.  See Yarborough v. Gentry, 540 U.S. 1, 4 (2003); Medina v. Hornung, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. See Bell v. Cone, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the

state court correctly identified the governing legal principle from Supreme Court decisions, but unreasonably applied those decisions to the facts of a particular case. Id.  Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." See Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. See Ylst v. Nunnemaker, 501 U.S. 797, 805-06 (1991).  If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by Andrade, 538 U.S. at 75-76); accord Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim.  See Early, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" id., the state court decision will not be "contrary to" clearly established federal law. Id.  Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." Andrade, 538 U.S. at 72.

**B. Analysis**

Petitioner contends that the laboratory report contained testimonial hearsay and, therefore, his Sixth Amendment rights were violated when the trial court admitted the report into evidence and permitted Jorge Peña to testify about the results contained therein. (Trav. at 1:18-24.)

6

13CV2957-WQH(JMA)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Confrontation Clause grants the right to a defendant in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. Amend. VI.  In Crawford v. Washington, the United States Supreme Court held that "[t]estimonial statements of witnesses absent from trial have been admitted…only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." 541 U.S. 36, 59 (2004).  Although Crawford did not provide a comprehensive definition of "testimonial statements," the Court identified three "core class[es]": (1) ex parte in-court testimony or its functional equivalent, such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; (2) extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and (3) statements made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. Id. at 51-52.

In Melendez-Diaz v. Massachusetts, the Supreme Court applied its analysis in Crawford to a defendant in Massachusetts charged with cocaine trafficking. 557 U.S. 305, 308 (2009).  During trial, the prosecution entered into evidence three "certificates of analysis," without calling the witnesses who prepared the certificates. Id.  The certificates reflected the results of a prior forensic laboratory analysis and stated the weight of the bags seized by the police and identified the substance contained in the bags as cocaine. Id.  In a five-to-four decision, the Supreme Court held that the trial court's admission of the certificates violated the defendant's right to confront the authors of the certificates, finding that the certificates were "quite plainly affidavits" and therefore, a "solemn declaration or affirmation for the purpose of establishing or proving some fact." Id. at 310 (quoting Crawford, 541 U.S. at 51).  The court reasoned that at the time of trial, the defendant was incapable of testing the

13CV2957-WQH(JMA)

laboratory analysts' "honesty, proficiency, and methodology," which are ordinarily ripe grounds for cross-examination. <u>Melendez-Diaz</u>, 557 U.S. at 321.

In <u>Bullcoming v. New Mexico</u>, the Supreme Court encountered a factual scenario similar to that of <u>Melendez-Diaz</u>.  In <u>Bullcoming</u>, the defendant was charged with driving while intoxicated and a forensic analyst's laboratory report certifying that the defendant's blood-alcohol concentration was above the legal threshold was admitted into evidence. <u>Bullcoming v. New Mexico</u>, 564 U.S. __, __, 131 S. Ct. 2705, 2707 (2011).  However, unlike <u>Melendez-Diaz</u>, the prosecution in <u>Bullcoming</u> called a forensic expert, Razatos, to testify regarding the analyst's original laboratory report. <u>Id.</u>  Razatos was familiar with the equipment used to test the defendant's blood, but had not "participated in nor observed the test" on the defendant's blood sample. <u>Id.</u>  The Court noted that the certificate completed and signed by the analyst who authored the report specifically affirmed the following:

> '[t]he seal of th[e] sample was received intact and broken in the laboratory,' that 'the statements in [the analyst's block of the report] are correct,' and that [the analyst] had 'followed the procedures set out on the reverse of th[e] report.' Those 'procedures' instructed analysts, *inter alia*, to 'retai[n] the sample container and the raw data from the analysis,' and to 'not[e] any circumstance or condition which might affect the integrity of the sample or otherwise affect the validity of the analysis.'

<u>Id.</u> at 2710-11 (internal citations omitted).

The majority held that the analyst's signed certificate was testimonial, finding that the Confrontation Clause did not allow the admission of the blood alcohol report through Razatos's "surrogate testimony" because he could not convey what the author of the report knew about the particular test and the testing process employed. <u>Id.</u> at 2715.  Consequently, when the State chose to introduce the analyst's certification, "[the analyst] became a witness Bullcoming had the right to confront." <u>Id.</u> at 2716.    In facts nearly identical to the present action, the California Supreme Court analyzed the scope of the United States

Supreme Court's holdings in <u>Crawford</u>, <u>Melendez-Diaz</u>, and <u>Bullcoming</u>.   In <u>People v. Lopez</u>, the defendant was convicted of vehicular manslaughter while intoxicated after a trial in which the prosecution submitted into evidence a laboratory report demonstrating that the defendant's blood alcohol content was above the legal limit. 286 P.3d 469, 471 (2012).   At trial, the analyst who performed the laboratory testing was unavailable,[2] so the prosecution called criminalist John Willey to testify in the analyst's stead. <u>Id.</u> at 472.   Willey testified he had reviewed the original analyst's report and that the results of the report showed the defendant's blood sample was 0.09 percent. <u>Id.</u>   The analyst's report consisted of a "chain of custody log sheet," printouts of the gas chromatography's machine calibrations on the day of the test, printouts of the numerical results of the laboratory analyses, and several pages of "quality control runs before and after the subject samples." <u>Id.</u> at 478.

The court held that the chromatography calibration documents, the numerical results, and the quality control documents did not violate the defendant's right to confrontation because they were "machine-generated" statements and a machine could not be cross-examined. <u>Id.</u>   Nevertheless, the court indicated that the submission of the "chain of custody log sheet" into evidence presented a more difficult question because that document included handwritten notations linking the defendant's name to the blood sample containing 0.09 percent alcohol. <u>Id.</u>   The court concluded, however, that the notation was not testimonial because the analyst who prepared the report had not "signed, certified, or swor[n]" to the contents of the report. <u>Id.</u> at 479.   The notations connecting the defendant to the elevated blood sample were an

---

[2] In a strange coincidence, the unavailable analyst in <u>Lopez</u> was the prosecution's expert witness in the present case: Jorge Peña.

1    "informal record of data for internal purposes" and, therefore, the report lacked

2    the requisite "formality or solemnity." Id.

3          Petitioner contends the admission of Carter's report into evidence violated

4    his right of confrontation. (Trav. at 3:4-6.)  Petitioner argues that the report

5    contained testimonial hearsay because it included (1) a certification by Carter

6    signed under penalty of perjury, (2) a handwritten log sheet showing that the

7    result of Petitioner's blood test analyzed by Carter was a 0.142 percent blood

8    alcohol content, and (3) gas chromatograms and a calibration log containing

9    Carter's signature. (Trav. at 8:8-14; Resp. Lodgment 10.)  The Appellate Division

10   unanimously rejected this claim, finding that Carter's report was identical to the

11   report found to be non-testimonial in Lopez. (Resp. Lodgment 23 at 8:25-27,

12   20:27-28.)

13         The report at hand is similar to the report in Lopez.  First, pages 2-6 of

14   Carter's report consist almost entirely of computer printouts.  It is not settled

15   under Supreme Court law that machine-generated printouts of gas

16   chromatography results or calibration logs violate a defendant's right to

17   confrontation. See Bullcoming, 564 U.S. at p. __, 131 S.Ct. at p. 2722  ("[W]e do

18   not decide whether…a State could introduce…raw data generated by a machine

19   in conjunction with the testimony of an expert witness."); State v. Buckland, 96

20   A.3d 1163, 1169 (Conn. 2014) ("We also note that the United States Supreme

21   Court has not addressed the issue of whether the introduction of raw data

22   generated by a machine falls within the confines of Crawford or Melendez-

23   Diaz.").  In fact, multiple federal circuit courts have concluded that machine-

24   generated raw data does not implicate the Sixth Amendment. See United States

25   v. Moon, 512 F.3d 359, 362 (7th Cir. 2008) ("the instruments' readouts are not

26   'statements', so it does not matter whether they are 'testimonial.'"); United States

27   v. Washington, 498 F.3d 225, (4th Cir. 2007) ("we reject the characterization of

28

13CV2957-WQH(JMA)

the raw data generated by the lab's machines as statements of the lab technicians who operated the machines.").

Second, page 7 of Carter's report is the same type of log sheet containing handwritten notations as was present in <u>Lopez</u>.  Within one of the rows on the log sheet, Petitioner's name is handwritten along with the result "0.14" in a column labelled "Report ETOH grams %."[3] (Resp. Lodgment 10 at 7.)  In the same row the initials "RC" are signed in the column "Ana[lyzed] By:." (Resp. Lodgment 10 at 7).  Faced with an identical log sheet with similar notations prepared by the same crime laboratory, the court in <u>Lopez</u> stated this document was not testimonial hearsay because the log sheet showed "only numbers, abbreviations, and one-word entries under specified headings" and was "nothing more than an informal record of data for internal purposes, as indicated by the small printed statement near the top of the chart: 'FOR LAB USE ONLY.'" <u>Lopez</u>, 286 P.3d at 479.

However, Petitioner's claim is distinguishable from <u>Lopez</u> in an important respect: the analyst's report in <u>Lopez</u> did not contain certifications, whereas the first page of the report at issue here provided:

> I, Raegan Carter, certify under penalty of perjury…that the attached blood or urine analysis was performed during the regular course of my duties and is a true and correct copy thereof. I further certify that I am classified by the State Department of health as a Forensic Alcohol Supervisor or Forensic Alcohol Analyst or Forensic Alcohol Analyst Trainee for the San Diego Sheriff's Department Crime Laboratory, that I am qualified to perform these analyses pursuant to Title 17 of the California Code of Regulations, and that the equipment used in determining the results was in proper working order at the time this analysis was performed.[4]

---

[3] ETOH is an abbreviation for Ethanol.

[4]  The Court notes that there is some dispute between the parties regarding whether this header page was actually admitted into evidence. (<u>Compare</u> Ans. at 15:27-28 <u>with</u>, Pet. Trav. at 10:10-16.)  Even assuming the certificate was entered into evidence, this Court does not find a Confrontation Clause violation under clearly established Supreme Court precedent.

13CV2957-WQH(JMA)

1 (Resp. Lodgment 10 at 1); see also Lopez, 286 P.3d at 479 ("neither [analyst

2 preparing the report] signed, certified, or swore to the truth of the contents of

3 page one of the report.").

4        Unlike the notations in Lopez, these certifications gave the report a

5 sufficient level of formality to render Carter's notations within the report

6 testimonial under Supreme Court precedent. See Bullcoming, 564 U.S. at __,

7 131 S.Ct. at 2717 ("Thus, although the…report was not notarized, the formalities

8 attending the report were more than adequate to qualify [the analyst's] assertions

9 as testimonial.").  Respondent relies on United States v. Johnson, 688 F.3d 494

10 (8th Cir. 2012) for the proposition that reports containing header pages that

11 merely certify a report as a "true copy of the original," but do not certify the truth

12 of the report's contents are non-testimonial.  However, the certifications here are

13 distinguishable from those in Johnson because Carter not only certified that her

14 report was a "true and correct copy," but also that she followed proper

15 procedures in testing Petitioner's blood and that her equipment was in "proper

16 working order" at the time of the analysis.  Like the certifications in Bullcoming,

17 Carter's certificate attested to the veracity of the report's contents and such

18 statements accompanying forensic reports are "solemn declaration[s] or

19 affirmation[s] made for the purpose of establishing or proving some fact."

20 Melendez-Diaz, 557 U.S. at 310 (quoting Crawford, 541 U.S. at 51)); see also

21 State v. Sorensen, 814 N.W.2d 371 (Neb. 2012) (nurse's certificate stating that

22 the defendant's blood was drawn in a "medically accepted manner" utilized to

23 prove that defendant was driving under the influence was "clearly testimonial").

24        Nevertheless, although Carter's report was testimonial, the United States

25 Supreme Court has made clear that the Confrontation Clause does not mandate

26 "that anyone whose testimony may be relevant in establishing the chain of

27 _____

28

13CV2957-WQH(JMA)

custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." <u>Melendez-Diaz</u>, 557 U.S. at 311, n.1.  It is only where the witness giving the "surrogate testimony" is not an "adequate substitute" for the author of the testimonial report that a defendant's right to confrontation is violated. <u>Bullcoming</u>, 564 U.S. at __, 131 S.Ct. at 2708. However, <u>Bullcoming</u> did not address "what degree of involvement is sufficient" because Razatos had "no involvement whatsoever." <u>Id.</u> at 2722.  In fact, in her concurrence, Justice Sotomayor emphasized the "limited reach" of the majority's holding, commenting that <u>Bullcoming</u> was "not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue." <u>Id.</u> at 2719, 2722.  Thus, although Peña's involvement in the production of Carter's report amounted only to a technical review, in the absence of clearly established federal law, this Court cannot conclude that the admission of Carter's report violated Petitioner's Sixth Amendment rights.

Courts have found a "technical reviewer" who peer reviews a colleague's work and independently verifies its accuracy is sufficient to satisfy the demands of the Confrontation Clause, even where the reviewer neither observed nor performed the forensic testing at issue. <u>See</u> <u>Galloway v. State</u>, 122 So. 3d 614 (Miss. 2013) (no Confrontation Clause violation where technical reviewer assigned to the case testified in the place of the analyst who conducted the actual DNA test because the testifying analyst was familiar with each step of testing process); <u>Miller v. State</u>, 144 So. 3d 199 (Miss. Ct. App. 2014) (no Confrontation Clause violation where technical reviewer assigned to the case testified in the place of the analyst who conducted the actual drug test because the testifying analyst reviewed the report for errors, verified proper procedures were followed, and signed the report); <u>Jenkins v. State</u>, 102 So.3d 1063 (Miss. 2012) (no Confrontation Clause violation where technical reviewer assigned to

the case testified in the place of analyst who conducted the drug test because the testifying analyst performed procedural checks by reviewing the data and signed the report); Grim v. State, 102 So.3d 1073 (Miss. 2012) (same).

In Marshall v. People, the defendant was charged with driving under the influence after lab urinalysis revealed that she had methamphetamine in her system when she caused a car accident. 309 P.3d 943 (Colo. 2013).  At trial, the state introduced the lab report into evidence and called Burbach, the supervisor of the toxicology lab, to testify regarding the defendant's level of intoxication, despite the fact that Burbach had not actually performed the testing. Id. at 944. The court found that Burbach's testimony was distinguishable from the expert in Bullcoming because Burbach "synthesized the tests performed by two different analysts…reviewed the data generated by the scientific instruments to ensure that the controls show the instruments were working properly" and she "reviewed the analysts' notes to conclude that they followed lab protocol throughout the testing process." Id. at 947.  After her review, Burbach certified the test results and sent the results back to the police department. Id.  The court concluded that Burbach's independent scientific review and conclusions regarding the data satisfied the Confrontation Clause. Id.

Here, Peña's testimony regarding Carter's report did not clearly violate Petitioner's right of confrontation.  Akin to the expert in Marshall, Peña also conducted a technical review of Carter's report in order to verify its accuracy. Peña's signature appears under the line "Technically and Administratively Reviewed By" on page 2 of the report and again on page 7 next to the line "Reviewed By." (Resp. Lodgment 10 at 2, 7.)  While on the stand, Peña established that he had a thorough understanding of the laboratory's procedures for testing blood samples for alcohol content. (Resp. Lodgment 19 at 23:16-24:20.)  He testified that one of his responsibilities was to "go through all that information and verify that all that information is correct." (Id. at 35:8-11.)  Peña

13CV2957-WQH(JMA)

stated that in his review of Carter's notes he looked at every document prepared in the course of testing Petitioner's blood sample. (Id. at 35:16-28.)  Based on his review of the documents, Peña testified that he was able to determine that Carter tested Petitioner's sample accurately and in his opinion, the test results showing Petitioner's blood alcohol content to be 0.142 percent were also accurate. (Id. at 42:9-16.)

It is true that unlike the expert in Marshall, Peña did not sign the report's certification; however, Peña stated that only after his signature was affixed to the report showing that it was properly reviewed was the report returned to Carter for "processing." (Id. at 35:24-26.)  In other words, without Peña's technical review of the report, Carter would not have been able to sign the certification on page 1. Given Peña's technical review of Carter's work, his supervisory role in the lab, and his familiarity with the blood testing procedures, this Court is satisfied that admission of Carter's report when supported by Peña's testimony did not run afoul of the Confrontation Clause. See Davis v. Frauenheim, No. CV 12-3573-JLS, 2015 WL 9243921, at *13 (C.D. Cal. Nov. 20, 2015) ("In short, there simply is no clearly established Supreme Court law that a criminalist's testimony about DNA findings from a forensic test completed by another criminalist violates the Confrontation Clause where, as here, the testifying witness reviewed the work and was subject to cross-examination.").

## V.   CONCLUSION

The Court submits this Report and Recommendation to United States District Judge William Q. Hayes under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d)(4) of the United States District Court for the Southern District of California.  For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an order: (1) approving and adopting this Report and Recommendation, and (2) **DENYING** the Petition for the Writ of Habeas Corpus. / /

13CV2957-WQH(JMA)

1    **IT IS ORDERED** that no later than **March 21, 2016**, any party to this action

2    file written objections with the Court and serve a copy on all parties. The

3    document should be captioned "Objections to Report and Recommendation."

4    **IT IS FURTHER ORDERED** that any reply to the objections shall be filed

5    with the Court and served on all parties no later than **March 28, 2016**. The

6    parties are advised that failure to file objections within the specified time may

7    waive the right to raise those objections on appeal of the Court's order. Martinez

8    v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9    Dated:  March 4, 2016

10   Honorable Jan M. Adler

11   United States Magistrate Judge

16