1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

GEORGE PAUL HICKER,

CASE NO. 13cv2957-WQH (JMA)

11

Plaintiff,

ORDER

v.

12

SAN DIEGO COUNTY SUPERIOR
COURT,

13
14

Defendant.

HAYES, Judge:

15
16

The matter before the Court is the Objection to the Report and Recommendation

of the Magistrate Judge filed by the Petitioner George Paul Hicker.  (ECF No. 35).

17

**I. Introduction**

18
19

On December 9, 2013, Petitioner George Paul Hicker filed a Petition for Writ of

20

Habeas Corpus under 28 U.S.C. § 2254, challenging his conviction in San Diego

Superior Court, case number CN251716.  Petitioner contends that his rights under the

21

Sixth Amendment Confrontation Clause were violated at trial when an analyst witness

22
23

for the prosecution was permitted to testify about the results of blood alcohol tests

performed by another analyst who did not testify, and the blood alcohol report was

24

admitted into evidence.  Petitioner asserts that the testimony and the laboratory report

25

were admitted contrary to clearly established United States Supreme Court precedent.

26

Respondent contends that the decision of the state court to admit the testimony and the

27

laboratory report was not contrary to or an unreasonable interpretation of United States

28

Supreme Court authority.

**II. Background Facts**

On August 28, 2008, Petitioner was arrested for driving under the influence. After his arrest, a sample of Petitioner's blood was taken and tested by the San Diego County Crime Laboratory. A complaint was subsequently filed charging Petitioner with three counts: Count One - driving under the influence of alcohol, a violation of Vehicle Code § 23152(a); Count Two - driving with a measurable blood alcohol level above .08, a violation of Vehicle Code § 23152(b); and Count Three - driving with an open container, a violation of Vehicle Code § 23222(a).[1] Petitioner pled not guilty to the charges.

On February 9, 2009, the San Diego Superior Court began a two week jury trial. The prosecution called witness Jorge Peña, a laboratory analyst employed by the San Diego Crime Laboratory. Peña testified that he is the technical leader for the alcohol section at the San Diego Crime Laboratory, and that he is in charge of troubleshooting and training. Peña described in detail the gas chromatography test performed by the technicians in the laboratory to determine alcohol concentration in blood samples, including the calibration process used to test the instrument. Peña testified that based upon his training and experience, if the instrument is properly calibrated, the gas chromatography test is "an accurate method to determine someone's blood alcohol level." (ECF No. 32-2 at 25).

Peña testified that four individuals at the laboratory are authorized to conduct blood alcohol analysis, including himself and analyst Raegan Carter. Peña testified that a gas chromatography test was performed on Petitioner's blood sample by laboratory analyst, Raegan Carter. Peña testified that he was not present during Carter's analysis of Petitioner's blood sample. Peña testified that he reviewed Carter's report, after the analysis was completed by Carter. Peña testified that he did not have any direct knowledge as to how the specific blood sample in this case came to the crime lab, but that there was a system in place for all samples that come from the Encinitas station

---

[1] Count Three was dismissed at trial on the People's motion.

1  where this sample originated.  Peña described in detail about the procedures used in the
2  laboratory, absorption rates of alcohol in the body, and the effects of alcohol on mental
3  impairment.

4      During direct examination, the prosecutor questioned Peña about the analysis and
5  testing conducted by Carter.  Counsel for Petitioner objected to Peña's testimony about
6  the testing performed by Carter on the grounds the testimony violated Petitioner's Sixth
7  Amendment right to confrontation.  The objection was overruled.  During Peña's
8  testimony, the Court received into evidence "People's Exhibit 13" the laboratory packet
9  for the blood sample analysis prepared by analyst Carter.  The exhibit consisted of
10 seven pages including: (1) a one page certification prepared and signed by Carter; (2)
11 five pages of print outs from the chromatography instrument containing data from the
12 calibration tests, the quality control tests, and the tests of Petitioner's blood sample; and
13 (3) a one page lab log sheet on which Carter recorded the results from the tests.  (ECF
14 No. 19-9 at 1-7).[2]

15     Peña reviewed the print outs from the chromatography instrument in Exhibit 13
16 and testified that the instrument that tested Petitioner's blood was in proper working
17 order.  The prosecutor asked Peña, "what did the instrument test the defendant's blood
18 alcohol level to be?"  (ECF No. 32-2 at 33).  Petitioner's counsel objected:
19 "Foundation."  *Id.*  At sidebar, counsel for Petitioner objected on the "grounds of
20 hearsay and Sixth Amendment."  *Id.*  The Court overruled the objection and allowed a
21 "continuing objection to this particular line of inquiry."  *Id.*  Peña provided the
22 following testimony:

    LH (Prosecutor): Mr. Pena, . . . were you present when Raegan Carter was
23 testing these blood samples?

24     Peña: No, not looking over her shoulders I never do that, no.

25     LH: Now, what procedures have - do analysts who test blood in your
26 office follow when they . . . test a particular blood sample?

27 ⸻

28    [2] Lodgment 24 in the record of this case is the Exhibit List from the Superior Court which indicates Exhibit 13 is "SD Sheriff's Crime Lab Docs- Lab Pkg 7 pgs." (ECF No. 32-7 at 1).

13cv2957-WQH-JMA

Peña: [W]ell the same procedures I've been explaining. . . .

JH: Do you have any knowledge of how Raegan Carter tested the blood sample. . . ?

Peña: Yes.

JH: [H]ow do you know that?

Peña: . . . all the analysts have followed the exactly the same procedure. . . .

JL(the Court): I'm sorry, the question has to do with what Raegan did on that - . . . that particular date, relevant to this particular case.

JA(Counsel for Petitioner): And your honor under 702, the evidence code, no personal knowledge.

JL: Okay I, I will allow it.

Peña: So for this particular sample, again I was not right next to her watching her analyzing so I have to go with what is established procedure for the lab, which I know that she follows.

(ECF No. 32-2 at 34). Peña testified that his role in the analysis was a review of Carter's work. Pena testified,

I receive all of the analysis, receive all Ms. Carter's notes, receive everything and I go through all of that information and verify that all that information is correct. And after I finish my review process, and I provide it back to Ms. Carter so that she can file the results.

LH: Is there anything in the packet in front of you, that indicates you, you've reviewed her work?

Peña: Yes. . . . On page three of the packet, in the heading part of the packet for that page, it says technically and administratively reviewed by and has my signature and date when I did that and my stamp with my name on it.

LH: What kind of things are you checking for when you review Raegan Carter's notes, and the results that she comes up with?

Peña: Well basically I go through every single document that is prepared in the course of analyzing the sample, I look at the calibration records, I look at the chromatograms that will do that, the graphs. I look at the quality control samples that were used to test in-between the samples that I mentioned earlier to make sure that all of that came within the range required. I look specifically to the actual chromatograms to make sure again what I explained earlier that the peaks are where they're supposed to be, that they have the proper shape, they have all the information that needs to be contained there, and I also look at the reporting itself whether the sample was received by whom it was received and who and then the entry that Ms Carter does which is the results, her initials, the date and all of that is correct. Once all of that is confirmed that . . . the information

contained in that report is correct and then . . . put my signature and my stamp that is was reviewed and again give it back to Ms. Carter for processing, for clerical.

LH: And you did that in this case with Mr. Hicker's blood sample?

Peña: Correct.

(ECF No. 32-2 at 35). Peña testified that the instrument was calibrated correctly, and that the calibration records were accurate. Peña was asked:

LH: Okay. So based on the, the graphs, can you tell whether Raegan Carter tested this particular blood sample accurately?

Peña: Yes.

LH: How?

Peña: Again based on the actual chromatogram, based on the actual results of the instrument, that the peaks are showing that where they're supposed to be showing, they're showing in the place where they're supposed to be showing, and that the results, the two results that are obtained are agreeing results, that follows the quality control program. The agreeing of the results has to be according to Title 17, within plus or minus of .01 of each other and according to our manual within 07 of each other, and those results being within those - that criteria.

LH: And so based on the graphs that you're looking at, do you have an opinion about the accuracy of the blood results?

Peña: Yes.

LH: What is your opinion?

. . .

Peña: Well that the results obtained in this specific test were accurate - based again the quality control samples that I just explained and based on the end results from the actual sample.

(ECF No. 32-2 at 42). Peña testified that the results of the blood alcohol test conducted by Carter were .142 and Exhibit 13 was introduced into evidence. The jury found Petitioner not guilty of the charge in Count One of driving under the influence of alcohol and guilty of the charge in Count Two of driving with a blood alcohol level of 0.08 percent or greater.

Petitioner was sentenced to five years of summary probation, 96 hours jail with credit for 24 hours, 5 days weekend work release, an 18-month alcohol program, a Mothers Against Drunk Driving panel class, a fine of $2,408.00, and other terms as set

forth in the Misdemeanor – Traffic Judgment Minutes.[3]

Petitioner appealed his conviction to the Appellate Division of the San Diego Superior Court ("Appellate Division"). Petitioner asserted that he was entitled to examine the analyst who performed the blood alcohol test at trial in order to address the human error at each step of the process. Petitioner asserted that the United States Supreme Court in *Bullcoming v. New Mexico*,[4] clearly ruled that a defendant has the right to confront the witness who performed the blood analysis at trial. Petitioner asserted that the testimony of a witness who was not personally present during the testing and did not make any observations during the testing does not comport with his rights under the Sixth Amendment Confrontation Clause.

At the oral argument, the Appellate Division compared the laboratory packet Exhibit 13 in this case to the laboratory packet exhibit in the California Supreme Court case of *People v. Lopez*[5] and concluded, "it is our unanimous decision that . . . the conviction should be affirmed. We do feel that *Lopez* is controlling in this matter. So we are going to affirm the conviction." (ECF No. 32-6 at 21). During the oral presentation, the state court judge directed the following statement to counsel for Petitioner: "Had we heard and dealt with this case, prior to *Lopez* . . . coming out, under just the straight *Bullcoming* analysis and what existed then . . . I would have been, I would have been in absolute . . . and total agreement with you. On, on the analysis for *Bullcoming*." (ECF No. 32-6 at 10).

After the Appellate Division affirmed his conviction, Petitioner filed an application for certification for transfer to the California Court of Appeal. The application was denied on March 25, 2013. Petitioner filed a petition for transfer in the California Court of Appeal, Fourth Appellate District, Division One. The Court of

---

[3] The Petition states, "petitioner is currently on summary probation to the trial court." (ECF No. 1 at 2).

[4] 564 U.S. 647 (2011).

[5] 286 P.3d 469 (2012)

Appeal denied the petition on April 16, 2013.  Petitioner filed a Petition for Writ of Certiorari in the United States Supreme Court on July 11, 2013.  The petition was denied on October 7, 2013.

On December 19, 2013, Petitioner filed the Writ of Habeas Corpus Petition in this district court on the grounds that the trial court violated his Sixth Amendment right to confrontation when it admitted the blood alcohol report into evidence and permitted testimony by an analyst who did not perform the blood tests in question.  Petitioner asserts he would not have been convicted of violating Vehicle Code § 23152(b) if his Sixth Amendment Confrontation Clause objection to the blood testing evidence had been sustained by the trial court judge or the Appellate Division.  Petitioner contends that the admission of Carter's laboratory report with her sworn certificate without Carter's live testimony was contrary to clearly established United States Supreme Court precedent in *Melendez-Diaz v. Massachusetts*,[6] and *Bullcoming*.

Respondent timely filed an Answer to the Petition asserting that the Appellate Division did not unreasonably apply United States Supreme Court precedent. Respondent further contends that any Sixth Amendment violation was harmless error.

On March 4, 2016, the United States Magistrate Judge filed a Report and Recommendation recommending that this Court deny the Petition for the Writ of Habeas Corpus.  The Magistrate Judge concluded that "pages 2-6 of Carter's report consist almost entirely of computer printouts.  It is not settled under Supreme Court law that machine-generated printouts of gas chromatography results or calibration logs violate a defendant's right to confrontation."  (ECF No. 34 at 10).  The Magistrate Judge concluded that Page 7 of the Carter report is the "same type of log sheet containing handwritten notations as was present in Lopez." *Id*. at 11. The Magistrate Judge stated,

> Faced with an identical log sheet with similar notations prepared by the same crime laboratory, the court in Lopez stated this document was not testimonial hearsay because the log sheet showed "only numbers,

---

[6] 557 U.S. 305 (2009).

abbreviations, and one-word entries under specified headings" and was "nothing more than an informal record of data for internal purposes, as indicated by the small printed statement near the top of the chart: 'FOR LAB USE ONLY.'"

*Id.* quoting *Lopez*, 286 P.3d at 479.  The Magistrate Judge continued:

> Petitioner's claim is distinguishable from <u>Lopez</u> in an important respect: the analyst's report in <u>Lopez</u> did not contain certifications, whereas the first page of the report at issue here provided:
>
> > I, Raegan Carter, certify under penalty of perjury . . . that the attached blood or urine analysis was performed during the regular course of my duties and is a true and correct copy thereof.  I further certify that I am classified by the State Department of Health as a Forensic Alcohol Supervisor or Forensic Alcohol Analyst or Forensic Alcohol Analyst Trainee for the San Diego Sheriff's Department Crime Laboratory, that I am qualified to perform these analyses pursuant to Title 17 of the California Code of Regulations, and that the equipment used in determining the results was in proper working order at the time this analysis was performed.
>
> . . . Unlike the notations in <u>Lopez</u>, these certifications gave the report a sufficient level of formality to render Carter's notations within the report testimonial under Supreme Court precedent. See <u>Bullcoming</u>, 564 U.S. at _. 131 S.Ct. at 2717.

*Id.* at 11-12.  The Magistrate Judge found that "Carter's report was testimonial" but concluded that "the United States Supreme Court has made clear that the Confrontation Clause does not mandate 'that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case.'" *Id.* at 13 quoting *Melendez-Diaz*, 557 U.S. at 311, n.1.

The Magistrate Judge concluded that "although Peña's involvement in the production of Carter's report amounted only to a technical review, in the absence of clearly established federal law, this Court cannot conclude that the admission of Carter's report violated Petitioner's Sixth Amendment rights." *Id.*  The Magistrate Judge found that Peña established on the stand that he had a thorough understanding of the laboratory's procedures for testing blood samples for alcohol content, and that Peña testified that he was able to determine that Carter tested Petitioner's sample accurately based on his review of the documents.  The Magistrate Judge found that Peña was able

to testify that in his opinion the test results were accurate.  "Given Peña's technical review of Carter's work, his supervisory role in the lab, and his familiarity with the blood testing procedures, this Court is satisfied that admission of Carter's report when supported by Peña's testimony did not run afoul of the Confrontation Clause." *Id.* at 15.

Petitioner filed Objections to Magistrate Judge's Report and Recommendation on March 21, 2016. (ECF No. 35).  Petitioner objected to the statement in Footnote 4 of the Report and Recommendation that "There is some dispute between the parties regarding whether [the certification page] was actually admitted into evidence." (ECF No. 34 at 11 fn. 4).  Petitioner asserts that there is no dispute and the record is clear that Carter's certificate on the first page of the 7-page laboratory report was admitted into evidence at trial.

Petitioner further objects to the finding by the Magistrate Judge that the admission of Carter's report did not violate his rights under the Confrontation Clause as clearly established by the United States Supreme Court decisions.  Petitioner asserts that United States Supreme Court precedent has consistently held that a testimonial report may not be admitted into evidence at a criminal trial without live testimony from the witness who prepared the report.  Petitioner further contends that the constitutional error was not harmless.

**III. Contentions of the Parties**

Petitioner contends that the admission of Carter's analysis and report through the testimony of Peña is directly contrary to the clear requirements of the Confrontation Clause set forth by the United States Supreme Court.  Petitioner contends that the United States Supreme Court in *Melendez-Diaz* and *Bullcoming* held that a testimonial report may not be admitted into evidence against a defendant in a criminal trial without live testimony from the witness who prepared the report.  Petitioner contends that the Carter's laboratory report was testimonial hearsay and was admitted into evidence without the live testimony of the analyst who prepared the report.  Petitioner asserts that

the United States Supreme Court in *Bullcoming* stated clearly that the Confrontation Clause does not "tolerate dispensing with confrontation simply because the court believes that questioning one witness about another's testimonial statements provides a fair enough opportunity for cross-examination." 564 U.S. at 662. Petitioner asserts that the established precedent of the United States Supreme Court has made clear that a testimonial certification of a scientific report made in order to prove a fact at a criminal trial cannot be entered into evidence through the in-court testimony of a second person who did not personally perform or observe the performance of the test. Petitioner asserts that his right to confront the witness and his right to have an opportunity for cross-examination were not satisfied when Carter's blood alcohol test was admitted into evidence through the testimony of Peña, without a finding that Carter was not available for cross-examination and a prior opportunity for cross-examination.

Respondent asserts that the decision of the state court, that the laboratory report was not testimonial and did not trigger the right to confrontation, was not contrary to or an unreasonable application of clearly established federal law. Respondent contends that *Crawford* did not define the term "testimonial" and *Bullcoming* did not answer "the question of the degree to which an expert witness may rely and comment upon the out-of-court conclusions reflected in lab report which were reached by one who is not called as a witness." (ECF No. 19-2 at 12). Respondent asserts that the concurring opinion of Justice Sotomayer in *Bullcoming* supports the state court's conclusion that there was not a Confrontation Clause violation on the facts of Petitioner's case. Respondent contends that unresolved areas of federal law include the treatment of experts testifying to their opinions based on reports not admitted into evidence, as well as the degree of proximity the testifying witness must have to the scientific test. Respondent contends that the decision of the Appellate Division to rely upon *Lopez* and allow the testimony of  Peña and Carter's lab results into evidence was not contrary to the clearly established precedent in *Bullcoming*.

Respondent asserts that the United States Supreme Court has not clearly

concluded in any case that "a lab analyst's unsworn report analyzing machine-generated blood-alcohol concentration data included the requisite degree of formality to be testimonial." *Id.* at 13.  Respondent asserts that there was no "evidence of a sworn certification" by the analyst in this case unlike *Bullcoming*.  (ECF No. 19-2 at 16). Respondent also contends that the "certification by Carter on the cover sheet of the lab report does not certify the truth of the report, rather it certifies that the copy of the report provided is a true copy of the original.  Thus, the 'certification' does not render Carter's lab report 'testimonial.'" *Id.*

In the alternative, Respondent argues that any violation of Petitioner's Sixth Amendment rights was harmless "in view of the fact that Peña testified about his own examination of the reports and test results." *Id.* at 17.

## IV.  Standard of Review

28 U.S.C. § 2254(d) provides,

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

"By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).  In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the United States Supreme Court explained,

> First, a state court decision is "contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent."
> . . . .
> Second, "[u]nder the 'unreasonable application' clause, a federal habeas

court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable.

. . .

It is not enough that a federal habeas court, in its "independent review of the legal question," is left with a "'firm conviction'" that the state court was "'erroneous.'" We have held precisely the opposite: "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Rather, that application must be objectively unreasonable.

*Id.* at 73-76. (internal citations omitted).

"Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Harrington*, 562 U.S. at 101 quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

## V. Applicable Law

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. In *Crawford v. Washington*,[7] the United States Supreme Court examined its prior holding in *Ohio v. Roberts*,[8] "that an unavailable witness' out-of-court statement may be admitted so long as it has an adequate indicia of reliability – *i.e.*, falls within a 'firmly rooted hearsay exception' or bears 'particularized guarantees of trustworthiness.'" *Crawford,* 541 U.S. at 42 (quoting *Roberts*, 448 U.S. at 66). The Supreme Court recognized that "[t]he *Roberts* test allows a jury to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability." 541 U.S. at 62. The Supreme Court reviewed the historical background of the Confrontation Clause and clearly rejected the weighing of

---

[7] 541 U.S. 36 (2004).

[8] 448 U.S. 56 (1980)

the "reliability factors" under *Roberts*.  *Id*.  The Supreme Court explained,

> The Constitution prescribes a procedure for determining the reliability of testimony in criminal trials, and we, no less than the state courts, lack authority to replace it with one of our own devising.
> . . . .
>
> Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether.  Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.  We leave for another day any effort to spell out a comprehensive definition of "testimonial."  Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.  These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.
>
> In this case, the State admitted Sylvia's testimonial statement against petitioner, despite the fact that he had no opportunity to cross-examine her. That alone is sufficient to make out a violation of the Sixth Amendment. *Roberts* notwithstanding, we decline to mine the record in search of indicia of reliability. Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.

541 U.S. at 67-70.

Five years after *Crawford*, in *Melendez-Diaz v. Massachusetts*,[9] the Supreme Court applied its precedent in *Crawford* to the presentation of forensic laboratory testing results at trial by the introduction of notarized certificates.  During trial, the prosecution entered into evidence three "certificates of analysis" sworn before a notary public showing the results of forensic analysis performed on the seized substances.  557 U.S. at 308.  The certificates reflected the results of a prior forensic laboratory analysis stating the weight of the bags seized by the police and identifying the substance contained in the bags as cocaine.  Defendant objected to the admission of the certificates, asserting the Confrontation Clause decision in *Crawford* required the analysts to testify in person.   The objection was overruled.

The Supreme Court found that the certificates fell within the "core class of testimonial statements." *Id*. at 310.  "The documents at issue here . . . are quite plainly

---

[9] 557 U.S. 305 (2009).

affidavits . . . . The 'certificates' are functionally identical to live, in-court testimony, doing precisely what a witness does on direct examination."   *Id*. at 310-11 (internal citation omitted).   The Supreme Court stated,

> In short, under our decision in *Crawford* the analysts' affidavits were testimonial statements, and the analysts were 'witnesses' for purposes of the Sixth Amendment.  Absent a showing that the analysts were unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to 'be confronted with' the analysts at trial. *Crawford*, supra, at 54, 124 S.Ct. 1354.

557 U.S. at 311.  The Supreme Court concluded that the trial court's admission of the certificates violated the defendant's right to confront the authors of the certificates.  The Court stated that "Respondent and the dissent may be right that there are other ways – and in some cases better ways – to challenge or verify the results of a forensic test.  But the Constitution guarantees one way: confrontation."  *Id*. at 318.  The Supreme Court explained that "confrontation is designed to weed out not only the fraudulent analyst, but the incompetent one as well."  *Id*. at 319.  The Supreme Court noted that "an analyst's lack of proper training or deficiency in judgment may be disclosed in cross-examination."  *Id*. at 320.  The Supreme Court concluded that confrontation was required to test the "analysts' honesty, proficiency, and methodology, – the features that are commonly the focus in the cross-examination of experts."  *Id*. at 321.

Seven years after *Crawford*, in *Bullcoming*, the Supreme Court applied its precedent in *Crawford* and *Melendez-Diaz* to a forensic laboratory report containing a testimonial certification.  The defendant was charged with driving while intoxicated.  During the trial, a forensic analyst's laboratory report certifying that the defendant's blood-alcohol concentration was above the legal threshold was admitted into evidence.  "At trial, the prosecution did not call as a witness the analyst who signed the certification.  Instead, the State called another analyst who was familiar with the laboratory's testing procedures, but had neither participated in nor observed the test on Bullcoming's blood sample."  564 U.S. at 651.  The Supreme Court stated,

> The question presented is whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular

> fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification. We hold that surrogate testimony of that order does not meet the constitutional requirement. The accused's right is to be confronted with the analyst who made the certification, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist.

*Id.* at 652. The certificate completed and signed by the analyst who authored the report specifically affirmed that "'[t]he seal of th[e] sample was received intact and broken in the laboratory,' that 'the statements in [the analyst's block of the report] are correct,' and that [the analyst] had 'followed the procedures set out on the reverse of th[e] report.'" *Id.* at 653.

The Supreme Court explained, "[A]nalysts use gas chromatograph machines to determine BAC [Blood Alcohol Concentration] levels. Operation of the machines requires specialized knowledge and training. Several steps are involved in the gas chromatograph process, and human error can occur at each step." *Id.* at 654. The Supreme Court stated,

> We granted certiorari to address this question: Does the Confrontation Clause permit the prosecution to introduce a forensic laboratory report containing a testimonial certification, made in order to prove a fact at a criminal trial, through the in-court testimony of an analyst who did not sign the certification or personally perform or observe the performance of the test reported in the certification. **Our answer is in line with controlling precedent: As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness.** Because the New Mexico Supreme Court permitted the testimonial statement of one witness, *i.e.*, Caylor, to enter into evidence through the in-court testimony of a second person, *i.e.*, Razatos, we reverse that court's judgment.

*Id.* at 657 (emphasis added, citation omitted). The Supreme Court stated in *Melendez-Diaz*, it held, "An analyst's certification prepared in connection with a criminal investigation or prosecution, . . . is 'testimonial,' and therefore within the compass of the Confrontation Clause." *Id.* at 658-659 (quoting *Melendez-Diaz*). The Supreme Court stated,

> The New Mexico Supreme Court stated that the number registered by the gas chromatograph machine called for no interpretation or exercise of independent judgment on Caylor's part. 226 P.3d, at 8–9. We have

> already explained that Caylor certified to more than a machine-generated number. See *supra*, at 2710 – 2711. In any event, the comparative reliability of an analyst's testimonial report drawn from machine-produced data does not overcome the Sixth Amendment bar. **This Court settled in *Crawford* that the "obviou[s] reliab[ility]" of a testimonial statement does not dispense with the Confrontation Clause.** 541 U.S., at 62, 124 S.Ct. 1354; see *id.*, at 61, 124 S.Ct. 1354 (Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing [the evidence] in the crucible of cross-examination"). Accordingly, the analysts who write reports that the prosecution introduces must be made available for confrontation even if they possess "the scientific acumen of Mme. Curie and the veracity of Mother Teresa." *Melendez–Diaz*, 557 U.S., at ——, n. 6, 129 S.Ct., at 2537, n. 6.

*Id.* at 661 (emphasis added).

The Supreme Court held that the Confrontation Clause did not allow the admission of the blood alcohol report through "surrogate testimony" because the witness "could not convey what [the author of the report] knew about the particular test and the testing process he employed" or "expose any lapses or lies on the certifying analyst's part." *Id.* at 661-62. The Supreme Court concluded "In short, when the State elected to introduce Caylor's certification, Caylor became a witness Bullcoming had the right to confront. **Our precedent cannot sensibly be read any other way**." *Id.* at 663 (emphasis added).

One year after *Bullcoming*, in *Williams v. Illinois*,[10] the Supreme Court concluded that out-of-court statements related by an expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and fall outside the scope of the Confrontation Clause. Reviewing its jurisprudence since *Crawford*, the Supreme Court examined its decisions in *Melendez-Diaz* and *Bullcoming* which "involved scientific reports." 132 S.Ct. at 2232. The Supreme Court distinguished the evidence in *Williams* from the evidence in *Melendez-Diaz* and *Bullcoming* which was created for the sole purpose of providing evidence against the defendant, and used to prove the truth of the matter asserted which fell within the scope of the Confrontation Clause. *See id.* at 2232-33.

More than a year after *Bullcoming*, the Supreme Court of California decided

---

[10] 132 S.Ct. 2221 (2012).

*People v. Lopez.*  In *Lopez*, the defendant was convicted of vehicular manslaughter while intoxicated after a trial in which the prosecution submitted into evidence "expert [] testimony about certain information in a report prepared by someone who did not testify at trial." 286 P.3d at 471.  The *Lopez* court stated,

> To prove intoxication, the prosecution at trial introduced into evidence a laboratory analyst's report on the percentage of alcohol in a blood sample taken from defendant two hours after the accident.  The analyst did not testify, but a colleague did.  A jury found defendant guilty as charged. The Court of Appeals reversed, holding that admission of nontestifying analyst's laboratory report and the colleague's testimony relating some of the report's contents violated defendant's right to confront and cross-examine the report's author.  Because we disagree with that holding, we reverse the Court of Appeals.

*Id.*

The *Lopez* court recognized that *Crawford* "created a general rule that the prosecution may not rely on 'testimonial' out-of-court statements unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination." *Id.* at 473 (quoting *Crawford*.)  The court then reviewed the United States Supreme Court's holdings in *Crawford*, *Melendez-Diaz*, *Bullcoming*, and *Williams*, and stated,

> As noted in the preceding part, the United States Supreme Court has said that generally the Sixth Amendment's confrontation right bars the admission at trial of a testimonial out-of-court statement against a criminal defendant unless the maker of the statement is unavailable to testify at trial and the defendant had a prior opportunity for cross-examination. (See 147 Cal.Rptr.3d at pp. 563–564, 286 P.3d at p. 473, *ante.*). Here, declarant Jorge Peña, whose laboratory report on the concentration of alcohol in defendant's blood two hours after the fatal accident was introduced into evidence by the prosecution, was not unavailable as a witness and defendant had no previous opportunity to cross-examine him. Was Peña's laboratory report testimonial and thus inadmissible? We explore that issue below.

*Id.* at 476.  The court examined the admission of the laboratory report and the admission of the testimony of the colleague that reviewed the original analyst's report.  The analyst's report in *Lopez* consisted of a six-page report described as a "chain of custody log sheet," printouts of the gas chromatography's machine calibrations on the day of the test, printouts of the numerical results of the laboratory analyses, and several pages of "quality control [runs] before and after the subject samples." *Id.* at 478.

The *Lopez* court held that the admission of the chromatography calibration

documents, the numerical results, and the quality control documents did not violate the defendant's right to confrontation because they were "machine-generated printouts." *Id*. "Because, unlike a person, a machine cannot be cross-examined, here the prosecution's introduction into evidence of [the] machine-generated printouts shown in pages two through six of the nontestifying analyst's . . . laboratory report did not implicate the Sixth Amendment's right to confrontation." *Id.*

The *Lopez* court noted that the admission of the "chain of custody log sheet" into evidence presented "a more difficult question" because that document included handwritten notations linking the defendant's name to the blood sample containing 0.09 percent alcohol. *Id*. The court concluded, however, that the notation was not testimonial because the analyst who prepared the report had not "signed, certified, or swor[n]" to the contents of the report. *Id*. at 479. The court concluded that the notations connecting the defendant to the elevated blood sample were an "informal record of data for internal purposes" and, therefore, the report lacked the requisite "formality or solemnity." *Id*.

The *Lopez* court stated,

> Because of our conclusion that the notation in nontestifying analyst Peña's laboratory report linking defendant's name to blood sample No. 070–7737 was not testimonial in nature, the trial court here was correct in overruling defendant's objection to that portion of the report, in permitting the prosecution to introduce that portion of the report into evidence, and in permitting expert Willey to testify regarding it. In holding to the contrary, the Court of Appeal erred.

*Id*.

## VI.  Ruling of the Court

In this case, Petitioner presented his claim on direct appeal to the appellate division of the state superior court.  Petitioner asserted that the admission of the laboratory report into evidence without the live testimony of the witness who prepared the report violated his confrontation clause rights.  The Appellate Division denied the claim on the merits finding that "*Lopez* is controlling in this matter."  (ECF No. 32-6 at 21).  In *Lopez*, the California Supreme Court concluded that the laboratory report was

properly admitted through the testimony of an analyst who did not conduct or observe the tests without violating the confrontation clause because the report was not testimonial.  This decision of the Appellate Division applying the ruling in *Lopez* constitutes the decision on the merits and is entitled to AEDPA deference.

In this case, the laboratory report prepared by analyst Carter is Exhibit 13 in the record.  The report included: (1) a one-page certification by Carter signed under penalty of perjury (ECF No. 19-9 at 1);[11] (2) a one-page calibration log containing Carter's signature and Peña's signature after the statement "technically and administratively reviewed by" (ECF No. 19-9 at 2); (3) four pages of gas chromatogram results for the quality control samples and the actual sample  (ECF No. 19-9 at 3-6); and (4) a one-page handwritten log sheet showing that the result of Petitioner's blood test (ECF No. 19-9 at 7).  As the Report and Recommendation noted, "the report at hand is similar to the report in *Lopez*." (ECF No. 34 at 10).  The Report and Recommendation continues:

> Petitioner's claim is distinguishable from <u>Lopez</u> in an important respect: the analyst's report in <u>Lopez</u> did not contain certifications, whereas the first page of the report at issue here provided:
>
>> I, Raegan Carter, certify under penalty of perjury…that the attached blood or urine analysis was performed during the regular course of my duties and is a true and correct copy thereof. I further certify that I am classified by the State Department of Health as a Forensic Alcohol Supervisor or Forensic Alcohol Analyst or Forensic Alcohol Analyst Trainee for the San Diego Sheriff's Department Crime Laboratory, that I am qualified to perform these analyses pursuant to Title 17 of the California Code of Regulations, and that the equipment used in determining the results was in proper working order at the time this analysis was performed.
>
> (Resp. Lodgment 10 at 1);  see also <u>Lopez</u>, 286 P.3d at 479 ("neither [analyst preparing the report] signed, certified, or swore to the truth of the contents of page one of the report.").
>
> Unlike the notations in <u>Lopez</u>, the certification gave the report a sufficient level of formality to render Carter's notations within the report testimonial under Supreme Court precedent. <u>See Bullcoming</u>, 564 U.S. at __, 131 S.Ct. at 2717 ("Thus, although the…report was not notarized, the

---

[11] The oral argument before the Appellate Division contains no reference to Carter's certification. However, the record clearly shows that the seven page Exhibit 13 included the certification. (ECF No. 19-9).  The state court record confirms that all seven pages of Exhibit 13 were admitted into evidence.  (ECF No. 32-7).

formalities attending the report were more than adequate to qualify [the analyst's] assertions as testimonial.").

(ECF No. 34 at 11-12) (footnote omitted).

The Report and Recommendation correctly concludes that Carter's "certification gave the laboratory report a sufficient level of formality to render Carter's notations within the report testimonial." (ECF No. 34 at 12). Carter certified under penalty of perjury that the "attached analysis was performed during the regular course of [] duties and is true and correct copy thereof," that Carter is a classified by the State Department of Health as a Forensic Alcohol Analyst, and that Carter is "qualified to perform these analyses pursuant to Title 17 of the California Code of Regulations." (ECF No. 19-9 at 1). Carter certified that "the equipment used in determining the results was in proper working order at the time the analysis was performed." *Id*. The representations made by Carter under penalty of perjury and attached to the forensic testing results are "functionally identical to live, in-court testimony, doing precisely what a witness does on direct examination." *Melendez-Diaz*, 557 U.S. at 310 (internal quotation marks omitted). The representations made by Carter regarding her proficiency, and methodology are features commonly the focus of cross-examination.

Clearly established United States Supreme Court precedent supports only the conclusion that Carter's laboratory report containing a testimonial certification created for the sole purpose of proving a particular fact at trial and offered for the truth of the matter asserted, is testimonial. *See Melendez-Diaz*, 557 U.S. at 310 (Forensic reports created solely for "evidentiary purposes" are "testimonial statements" and the certifying "'analysts' were 'witness' for the purpose of the Sixth Amendment."); *Bullcoming*, 564 U.S. at 665. ("In sum, the formalities attending the 'report of blood alcohol analysis' are more than adequate to qualify [the certifying analyst's] assertions as testimonial."). *See also Williams v. Illinois*, 132 S.Ct. at 2265 (Kagan, dissent) ("A few years [after *Crawford*, in *Melendez-Diaz*], we made clear that *Crawford*'s rule reaches forensic reports.").

"Evaluating whether a rule application was unreasonable requires considering the

rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Harrington*, 562 U.S. at 101 quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). The United States Supreme Court rule application under the facts of this case is established and specific. In *Bullcoming*, the Supreme Court stated, "As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness." 564 U.S. at 657.

In this case, Carter was not found to be unavailable and Petitioner did not have a prior opportunity to confront Carter. The prosecution instead called Peña who testified that Carter "tested this particular blood sample accurately." (ECF No. 32-2 at 42). Peña testified that Carter conducted the testing and that he did not observe Carter conduct the testing. Peña testified that Carter tested this particular blood sample accurately based upon his knowledge of the laboratory procedures and his review of the test results. Peña was asked, "Do you have any knowledge of how Raegan Carter tested the blood sample?" Peña stated, "Yes." Peña was asked, "How do you know that?" Peña stated: "all the analysts have followed the exactly (sic) same procedure." Peña stated, "For this particular sample, again I was not right next to her watching her analyzing so I have to go with what is established procedure for the lab, which I know that she follows." *Id.* at 34.

Clearly established United State Supreme Court precedence supports only the conclusion that Peña's testimony did not meet the constitutional requirement of confrontation under the Sixth Amendment. In *Bullcoming*, the Supreme Court stated,

> The question presented is whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification. We hold that surrogate testimony of that order does not meet the constitutional requirement. **The accused's right is to be confronted with the analyst who made the certification, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist.**

564 U.S. at 652 (emphasis added).  This rule is specific and directly applicable to the facts of this case in the manner that the Supreme Court applied the rule to the facts of *Bullcoming*.

Peña could not testify as to what Carter actually did during the testing because Peña did not observe the test reported in Carter's certification.   As explained in *Bullcoming*, "There are several steps in the gas chromatographic process, and human error can occur at each step."   564 U.S. at 654.[12]  Carter's testimony under oath would have enabled Petitioner's counsel to raise before a jury questions concerning Carter's proficiency, the care Carter took in performing the testing, and Carter's veracity.  *See Bullcoming*, 564 U.S. at 662 n.7.  Peña could not convey what Carter knew or observed about the events the certification concerned, i.e. the particular test and testing process he employed.  Only cross-examination of Carter would reveal these facts.  Testing an analyst's honesty, proficiency, and methodology requires the cross-examination of the "particular scientist" who conducted the test or observed the test.  *Id*. at 652, *See also id*. at 673 (Sotomayer, concurring in part) ("It would be a different case if, for example, a supervisor who observed an analyst conducting a test testified about the results or report about such results.").

In this case, Peña was a thorough and knowledgeable witness.  However, the United States Supreme Court

> settled in *Crawford* that the "obviou[s] reliab[ility]" of a testimonial statement does not dispense with the Confrontation Clause.  541 U.S., at 62, 124 S.Ct. 1354; *see id*., at 61, 124 S.Ct. 1354 (Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing [the evidence] in the crucible of cross-examination").  Accordingly, the analysts who write reports that the prosecution introduces must be made available for confrontation even if they possess "the scientific acumen of Mme. Curie and the veracity of Mother Teresa."  *Melendez–Diaz*, 557 U.S., at ——, n. 6, 129 S.Ct., at 2537, n. 6.

564 U.S. at 661.  The Supreme Court clearly stated the clear rule in *Bullcoming,* which applies to the facts of Petitioner's case.  "In short, when the State elected to introduce

---

[12] In *Bullcoming*, the non-certifying analyst witness testified that "[y]ou don't know unless you actually observe the analysis that someone else conducts, whether they follow th[e] protocol in every instance." 564 U.S. at 662 n. 8.

[the analyst's] certification, [the analyst] became a witness Bullcoming had the right to confront. **Our precedent cannot sensibly be read any other way**." *Id.* at 663 (emphasis added). This clearly established rule requires this Court to conclude that the decision of the Appellate Division that the laboratory report was properly admitted through the testimony of an analyst who did not conduct or observe the tests because the report was not testimonial, is an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.   Under clear United States Supreme Court precedent, Petitioner's Sixth Amendment right to confrontation was violated when the laboratory report containing a testimonial certification from Carter was admitted into evidence in his criminal trial without live testimony from Carter, without a finding that Carter was unavailable, and without a prior opportunity to confront Carter.  As a result, Petitioner is entitled to habeas relief under 28 U.S.C. § 2254(d).

Finally, this Court concludes that the constitutional error was not harmless under the facts of this case.  The verdict of not guilty on the charge of driving under the influence and guilty on driving with a measurable blood alcohol level above .08 highlights the significance of the laboratory report to the jury.  Respondent's assertion that "the admission of the report, if error, was harmless error in view of the fact that Peña testified about his own examination of the reports and test results" is contrary to the requirements of the Confrontation Clause. (ECF No. 19-2 at 17).  The Supreme Court in *Melendez-Diaz* clearly rejected Respondent's position, stating that "Respondent and the dissent may be right that there are other ways – and in some cases better ways – to challenge or verify the results of a forensic test.  But the Constitution guarantees one way: confrontation." *Id.* at 318.  *See also, Bullcoming*, 564 U.S. at 662 ("[T]he Clause does not tolerate dispensing with confrontation simply because the court believes that questioning one witness about another's testimonial statements provides a fair enough opportunity for cross-examination.").

## VII.  Conclusion

1         The objection to the Report and Recommendation filed by Petitioner (ECF No.

2    35) is sustained.  The Report and Recommendation is not adopted.

3         IT IS HEREBY ORDERED that the Writ of Habeas Corpus pursuant to 28

4    U.S.C. § 2254 filed by the Petitioner will be granted in sixty days unless the San Diego

5    Superior Court vacates the judgment of conviction in Case No. CN251716 and

6    determines within a reasonable period of time whether to retry the Petitioner. The

7    parties shall file a status report in 30 days.

8    DATED:  August 3, 2016

9

10   **WILLIAM Q. HAYES**
     United States District Judge